## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**CIVIL NO. 1:21-cv-2104**

**BRANDON SHAW, Individually and On
Behalf of All Others Similarly Situated,**

**Plaintiff,**

**V.**

**OTB ACQUISITION, LLC,**

**Defendant.**

**JURY TRIAL DEMANDED**

---

### PLAINTIFF'S ORIGINAL COLLECTIVE AND
### CLASS ACTION COMPLAINT AND JURY DEMAND

---

1.      The case implicates Defendant OTB Acquisition, LLC's ("Defendant") violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of its employees at the federally mandated minimum wage rate and violations of the Colorado Wage and Hour Laws for Defendant's failure to pay Plaintiff and all similarly situated workers their earned minimum wages.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b) and a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of Colorado Law.

2.      Defendant pays its tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Colorado, pursuant to Colorado Minimum Wage Order 32, the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.*, and the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et. seq.* Under the tip-credit

provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.      However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id.* stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999)(for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5.      Additionally, an employer must pay the minimum statutory hourly rate.  *See* 29 U.S.C. 203(m).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation.  *See Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at \*4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work.").

7.      Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Harrison v. Rockne's Inc.,* 274 F. Supp. 3d 706, 713 (N.D. Ohio 2017)(Plaintiffs sufficiently alleged a claim when "they alleged that they were required to perform non-tipped related duties more than 20% of their regular work.")*; Fast v. Applebee's Int'l, Inc*., 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time.").

8.      Defendant violated the FLSA and Colorado Law in the following respects:

   a.  **Violation for failure to inform:**  Defendant failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations.  In fact, Defendant failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips

contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendant, which reduced his wages below the minimum hourly wage required for tipped employees. This conduct also violates Colorado law which requires the employer to pay for the cost of purchasing and maintaining uniforms.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, cleaning dishes, brewing tea, cleaning bathrooms, gathering and preparing tortillas, cleaning the tortilla chip machine, sweeping the kitchen, gathering guacamole ingredients, stocking plates, and stocking sauces.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff was required to perform greater than 20% of his time in performing non-tip producing side work, including, but not limited to filling condiments, cleaning trays, cleaning the POS system, wiping menus, and cleaning the serving line.

9. As a result of these violations, Defendant has lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendant must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

### SUBJECT MATTER JURISDICTION AND VENUE

10. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

## PARTIES AND PERSONAL JURISDICTION

12.     Plaintiff Brandon Shaw is an individual residing in Colorado.  His written consent to this action is attached hereto as Exhibit "A."

13.     The FLSA Class Members are all current and former tipped employees who worked for Defendant for at least one week during the three year period prior to the filing of this action to the present.

14.     The Colorado Class Members are all current and former tipped employees who worked for Defendant in Colorado for at least one week during the three year period prior to the filing of this action to the present.

15.     The FLSA Class Members and the Colorado Class Members shall be collectively referred to as the "Class Members."

16.     Defendant OTB Acquisition, LLC. is a foreign corporation doing business in Colorado.  Said Defendant may be served process by serving its registered agent CT Corporation System, 7700 E. Arapahoe Road, Suite 220, Centennial, CO 80112.

17.     Defendant at all times relevant to this action has had sufficient minimum contacts with the State of Colorado to confer personal jurisdiction. Defendant conducts business throughout Colorado. Furthermore, Defendant contracted with and employed Colorado residents, has Colorado customers, markets to residents of Colorado, and owns property in Colorado.  Moreover, the violation of the law and harm committed against Plaintiff occurred in Colorado.

## COVERAGE

18.     At all material times, Defendant has been an employer within the meaning of the FLSA.  29 U.S.C. § 203(d).

19.     At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

20.     At all material times, Defendant has enjoyed yearly gross revenue in excess of $500,000.

21.     At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

22.     At all material times, Defendant has operated in the food and beverage industry as well as the retail and service industry subject to Colorado Minimum Wage Order 32, the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.*, and the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et. seq.*

## FACTS

23.     Defendant operates a nationwide chain of restaurants under the trade name "On the Border Mexican Grill & Cantina" throughout the U.S.  Defendant operate in Alabama, Colorado, Florida, Kentucky, New Mexico, Oklahoma, Ohio, Tennessee, Texas, and other states.

24.     The On the Border Mexican Grill & Cantina restaurants are full-service restaurants that employ waiters and bartenders to provide services to customers.

25.     A waiter gathers orders from customers and delivers food and drinks to the customers.

26.     A bartender makes various alcoholic beverages to customers.

27.     Defendant pays its waiters and bartenders less than the federal minimum wage of $7.25 per hour and less than the Colorado minimum wage

28.     Defendant attempted to utilize the tip credit to meet its minimum wage obligation to its waiters and bartenders, including the Plaintiff and Class Members.

29.     Plaintiff Shaw worked for Defendant at the On the Border Mexican Grill & Cantina location in Colorado Springs, Colorado.  He worked as a server and caterer and was paid less than the minimum wage.  He worked for Defendant from approximately July 2017 to December 2019.

30.     The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 11, 2021).  The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work**. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id*.) (emphasis in original)

31.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer how seeks to utilize the trip credit to meet their minimum wage obligations.

32.     In this case, Defendant did not satisfy the strict requirements to use the tip credit. Defendant maintained a policy and practice whereby it failed to provide the Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by

the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

33.     Defendant also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate.  While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

34.     These duties include but are not limited to the following: cleaning dishes, brewing tea, cleaning bathrooms, gathering and preparing tortillas, cleaning the tortilla chip machine, sweeping the kitchen, gathering guacamole ingredients, stocking plates, and stocking sauces, amongst other activities, that were not related to his tipped duties.

35.     Defendant also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

36.     Specifically, Defendant maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to filling condiments, cleaning trays, cleaning the POS system, wiping menus, and cleaning the serving line.

37.     Further, Defendant required Plaintiffs and the Class Members to perform non-tipped producing work prior to the opening of the restaurant and after the restaurant closed.  Indeed, Defendant required the Plaintiff and Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties.  Likewise, Defendant required the Plaintiff and Class Members to

remain at the restaurant after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 30 minutes to two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.

38.     However, Defendant did not pay its tipped employees the full minimum wage rate for this work. The duties that Defendant required Plaintiffs and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

39.     Similarly, Defendant has a catering position.  Caterers gather food and deliver it to customers.  That is, caterers load food into vehicles and drive that food to customers.  Despite the fact that caterers deliver food and have limited interaction with customers, Defendant did not pay the full minimum wage for this time.

40.     Moreover, Defendant's restaurants have private rooms for events.  Servers are required to arrive approximately 45 minutes to 1 hour prior to the start of the event to perform set up work.  This work includes setting up displays, buffet stations, balloons, and other decorations. After the event is over, servers are required to stay 45 minutes to 1 hour to clean the private room. This includes taking down decorations, cleaning tables, sweeping, rearranging tables and chairs, and other tasks.  Defendant did not pay the full minimum wage for this work.

41.     During Plaintiff's and the Class Members' employment, checklists were posted in Defendant's restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

42.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

43.     Indeed, Defendant did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

44.     Defendant did not track or record the amount of time their tipped employees spent performing non-tipped work, even though Defendant were capable of doing so.  Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments but Defendant failed to track to the specific tasks for Plaintiff.

45.     Defendant uses a point-of-sale system to record hours worked by its tipped employees.  Defendant then analyzes the information collected by this system, including the labor costs at each of the restaurants. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track to the specific tasks for Plaintiff and the Class Members.

46.     In the point-of-sale system, Defendant can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

47.     However, Defendant did not allow the waiters and bartenders to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

48.     Defendant's managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

49.     Moreover, Defendant violated the FLSA by not even paying the minimum "tipped" hourly rate.  Defendant required its tipped employees to pay for items for the uniform, including shirts, pants, belts, and shoes.  These clothing items were required to perform work for Defendant and were primarily for the benefit and convenience of Defendant. The costs for these items were

not reimbursed by Defendant.  Plaintiff spent approximately $200 towards his uniform and additional costs to maintain the uniform for Defendant.

50.     Because Defendant paid its tipped employees at the minimum of $2.13 per hour (or the state's respective tipped wage), any week in which a tipped employee was required to pay for work related expenses for Defendant's business, his/her compensation fell below the minimum wage rate, thereby negating Defendant's entitlement to claim the tip credit.

51.      In other words, by requiring Plaintiff and the Class Members to pay for these work related expenses, their hourly rates of pay were reduced by the amount of these uniform costs.  As a result, they were not even paid the minimum hourly rate necessary for Defendant to claim the tip credit.

52.     Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take a credit toward the minimum wage obligation to Plaintiff and the Class Members.

53.     As such, Plaintiff and the Class Members were not compensated at the mandated minimum wage.

54.     Defendant knew or should have known that its policies and practices violate the law, and Defendant has not made a good faith effort to comply with the FLSA. Rather, Defendant knowingly, willfully, and/or with reckless disregard of the law carried and continues to carry out its illegal pattern and practice regarding their tipped employees. Defendant's method of paying Plaintiff was not based on a good faith and reasonable belief that its conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION

55.      On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the

"80/20" rule that had existed at the time.  However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference.  *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); Cope v. Let's Eat Out, Inc., 354 F. Supp. 3d 976 (W.D. Miss. 2019).

56.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).   After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).

57.     After   delaying   the   effective   date   of   the   Final   Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped   employee   can   perform   when   an   employer   is   taking   a   tip   credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

58.     Under the proposed rule, if an employee performs non-tip work **that exceeds 30 continuous minutes**, that worker is no longer performing work that is part of the tipped occupation. (*Id*) (emphasis added).

59.     Here, Defendant illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time.  That is because Defendant required Plaintiff and the Class Members to perform non-tipped work more than 30 minutes and up to two hours

before the restaurants were open for business or after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips.  A similar violation occurred each instance that there was a private event.  During this time, Defendant paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties, as noted above.

60.     Given that Defendant failed to comply with the requirements to take the tip credit, Defendant has lost the ability to claim the tip credit and owes Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendant.

## COLLECTIVE ACTION ALLEGATIONS

61.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all current and former tipped employees who worked for Defendant for at least one week during the three year period prior to the filing of this action to the present.

62.     Plaintiff has actual knowledge, through conversations with his co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

63.     The FLSA Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

64.     Plaintiff has actual knowledge, through conversations with his co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

65.     Like Plaintiff, the FLSA Class Members were not given proper notice of the tip credit provisions, were subject to the same expense practices, and performed substantial work that was unrelated to their tip producing duties.

66.     Additionally, the FLSA Class Members were, like Plaintiff, required to perform non-tip producing work prior to the restaurants opening and after the restaurants closed for the day for more than 30 consecutive minutes.

67.     Further, the FLSA Class Members were, like Plaintiff, not properly informed of Defendants' intent to utilize the tip credit.

68.     Moreover, the FLSA Class Members were also subject to expenses that dropped their compensation below the minimum wage.

69.     Plaintiff and the FLSA Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

70.     The names and address of the FLSA Class Members of the collective action are available from Defendants' records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

71.     Although the exact amount of damages may vary among the FLSA Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

72.     As such, the class of similarly situated FLSA Class Members is properly defined as follows:

> **All current and former tipped employees who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.**

## COLORADO CLASS ALLEGATIONS

73.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Colorado Class Members which is comprised of the following:

**All current and former tipped employees who worked for Defendant for at least one week in Colorado during the three year period prior to the filing of this action to the present.**

74.     Numerosity.  The number of members in the Colorado Class is believed to exceed forty.  This volume makes bringing the claims of each individual member of the Colorado Class before this Court impracticable.  Likewise, joining each individual member of the Colorado Class as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Colorado Class will be determined from Defendant's records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Colorado Class and Defendant.

75.     Typicality.  Plaintiff's claims are typical of the Colorado Class because like the members of the Colorado Class, Plaintiff was subject to Defendant's uniform policies and practices and was compensated in the same manner as others in the Colorado Class. Plaintiff and the Colorado Class have been uncompensated and/or under-compensated as a result of Defendant's common policies and practices which failed to comply with Colorado law.  As such, Plaintiff's claims are typical of the claims of the Colorado Class.  Plaintiff and all members of the Colorado Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law as alleged herein.

76.     Adequacy.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Colorado Class because it is in his interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Colorado law.

15

Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Colorado Class he seeks to represent.

77. <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

    a. Whether Defendant properly informed Plaintiff and the Colorado Class Members of the intent to claim the tip credit;

    b. Whether more than 20% of the work performed by Plaintiff and the Colorado Class Members was non-tip generating work;

    c. Whether Plaintiff and the Colorado Class Members performed more than 30 consecutive minutes of non-tip producing work; and

    d. Whether Plaintiff and the Colorado Class Members were subject to paying for their uniforms.

78. The common issues of law include, but are not limited to;

    a. Whether Defendant can claim the "tip credit";

    b. Whether Defendant violated Colorado law;

    c. Whether Plaintiff and the Colorado Class are entitled to compensatory damages;

    d. The proper measure of damages sustained by Plaintiff and the Colorado Class Members; and

    e. Whether Defendant's actions were "willful."

79. <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Colorado Class could afford to pursue individual litigation against a company the size of Defendant, doing so would

unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Colorado Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

80.     A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Colorado Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Colorado Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of members of the Colorado Class is readily identifiable from Defendant's records.

81.     This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or procedures were uniform; and (2) the burden is on Defendant to prove it properly compensated its employees including any potential exemptions that might apply. Ultimately, a class action is a superior form to resolve the Colorado claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendant to pay Plaintiff and the Colorado Class Members per applicable Colorado laws.

## CAUSES OF ACTION

### COUNT I

### FAILURE TO PAY THE MINIMUM WAGE UNDER COLORADO LAW

82.     Plaintiff incorporates the preceding paragraphs by reference.

83.     This count arises from Defendant's violation of Colorado law in failing to pay minimum wages to Plaintiff and the Colorado Class Members.

84.     During their employment with Defendant, Plaintiff and the Colorado Class Members were not exempt from the minimum wage provisions under Colorado law.

85.     Defendant paid Plaintiff and the Colorado Class Members below the minimum wage rate in Colorado, in violation of Colorado Minimum Wage Order 32, the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.*, and the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et. seq.*

## COUNT II

### FAILURE TO PAY FOR WORK RELATED UNIFORMS

86.     Plaintiff incorporates the preceding paragraphs by reference.

87.     This count arises from Defendant's violation of Colorado law in failing to pay for the uniforms worn by Plaintiff and the Colorado Class Members.

88.     During their employment with Defendant, Plaintiff and the Colorado Class Members were required to purchase shirts, pants, non-slip shoes, aprons, and other items.  Plaintiff estimates he spent approximately $200 to purchase the uniform with additional costs to clean and maintain them.

89.     Colorado Minimum Wage Order 32 states: "Where the wearing of a particular uniform or special apparel is a condition of employment, the employer shall pay the cost of purchases, maintenance, and cleaning of the uniforms or special apparel."

90.     Defendant required Plaintiff and the Class Members to purchase and wear a uniform as a condition to work for Defendant.  However, Defendant failed to reimburse Plaintiff and the Class Members for the cost of the uniform in violation of Colorado Minimum Wage Order 32, the

Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.*, and the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et. seq.*

<h3 style="text-align:center">COUNT III</h3>

<h4 style="text-align:center">VIOLATION OF THE FAIR LABOR STANDARDS</h4>

<h4 style="text-align:center">FAILURE TO PAY THE MINIMUM WAGE</h4>

91.    Plaintiff incorporates the preceding paragraphs by reference.

92.    This count arises from Defendant's violation of the FLSA in connection with its failure to pay the minimum wages. *See* 29 U.S.C. § 206.

93.    Plaintiff and the FLSA Class Members were paid hourly rates less than the minimum wage while working for Defendant.

94.    Plaintiff and the FLSA Class Members were not exempt from the minimum wage requirements of the FLSA.

95.    Defendant's failure to pay the minimum wage to Plaintiff and the FLSA Class Members, in violation of the FLSA was willful and not based on a good faith belief that its conduct did not violate the FLSA.  To foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA.  29 U.S.C. § 255(a).

<h3 style="text-align:center">WAGE DAMAGES SOUGHT</h3>

96.    Plaintiff and the FLSA Class Members are entitled to receive the difference between the federal minimum wage and the tip credit adjusted minimum wage for each hour they worked.

97.    Plaintiff and the Colorado Class Members are entitled to receive the difference between the Colorado minimum wage rate and the tip credit adjusted minimum wage for each hour they worked.

98.      Plaintiff and the Class Members are entitled to reimbursement for all work related expenses they paid.

99.      Plaintiff and the Class Members are entitled to liquidated damages.

100.     Plaintiff and the Class Members are also entitled to recover their attorney's fees and costs, as required by the FLSA and Colorado law.

## JURY DEMAND

101.     Pursuant to his rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

102.     For these reasons, Plaintiff respectfully requests that judgment be entered in his favor awarding him and the Class Members:

a. Minimum wage compensation unadulterated by the tip credit;

b. Liquidated damages;

c. All misappropriated funds including all tips, expenses, and wages;

d. An order requiring Defendant to correct its pay practices going forward;

e. Reasonable attorney's fees, costs, and expenses of this action;

f. Pre and post judgment interest; and

g. Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Respectfully submitted,

_/s/ Don J. Foty_____
Don J. Foty
HODGES & FOTY, L.L.P.
Texas Bar No. 24050022
4409 Montrose Blvd., Suite 200
Houston, TX 77006

Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dfoty@hftrialfirm.com

And

Anthony J. Lazzaro
Ohio Bar No. 0077962
Alanna Klein Fischer
Ohio Bar No. 0090986
Lori M. Griffin
Ohio Bar No. 0085241
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
alanna@lazzarolawfirm.com
lori@lazzarolawfirm.com


Attorneys for Plaintiff and Class Members